IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| BETTY JO RODGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:15-CV-00959-PA |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

PANNER, J.

Plaintiff Betty Jo Rodgers appeals the Commissioner's decision denying her application for

supplemental security income under Title XVI of the Social Security Act. The court has jurisdiction

under 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

## **PRIOR PROCEEDINGS**

Rodgers alleged disability beginning January 1, 2001, due to breast cancer, Crohn's disease,

ovarian cysts, gastroesophogeal reflux disease, an anal fistula, hernias, and gall stones. Admin. R.

187, 202. The Administrative Law Judge ("ALJ") applied the sequential disability determination

process described in 20 C.F.R. § 416.920. Admin. R. 33-38. The ALJ found that Crohn's disease,

anal fistula, breast cancer status post mastectomy, hernia, obesity, osteoarthritis, and depression

adversely affected Rodgers's ability to perform basic work activities. Admin. R. 33. She found that,

1 - OPINION AND ORDER

despite these impairments, Rodgers retained the residual functional capacity ("RFC") to perform a limited range of light work with restrictions on climbing, postural activities, and working around hazards. The ALJ found Rodgers limited to work involving simple tasks and instructions typical of occupations with an SVP of 1 or 2. In addition, the ALJ found that Rodgers was limited to work that permitted easy access to a restroom. Admin. R. 35.

The vocational expert ("VE") testified that a person with Rodgers's RFC could perform the work-related activities required in occupations such as telephone survey worker and office helper, which represent over 400,000 jobs in the national economy. Admin. R. 38, 77. Accordingly, the ALJ concluded that Rodgers had failed to show she was disabled within the meaning of the Social Security Act. Admin. R. 38.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is such relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *See also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) ("Substantial evidence means more than a scintilla, but less than a preponderance.") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.     Claims of Error

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Rodgers contends the ALJ failed to properly evaluate her subjective assertions about her symptoms and that this led the ALJ to assess her RFC in a manner that did not accurately reflect all of her functional limitations.

### II.     Crediblity Determination

Rodgers contends the ALJ failed to provide an adequate basis for discounting her hearing testimony regarding the severity, persistence, and limiting effects of her alleged fecal incontinence. Rodgers testified that on average, she had three to four bowel movements per day, although sometimes she would have up to six. Admin. R. 55, 62. During one week per month, she would experience episodes of diarrhea in which she would not make it to the toilet in time and would have an accident requiring her to clean up the bathroom and change clothes. Admin. R. 63-64. Rodgers testified that it would not help to have the bathroom close by because during bouts of diarrhea, she would only be able to make it one or two steps before having an accident. Admin. R. 82.

The ALJ believed that Rodgers experienced intermittent episodes that included some diarrhea and urgency, as reflected in the significant limitations in Rodgers's RFC assessment requiring easy access to a bathroom and precluding activities from which it would be difficult to leave quickly to go to the bathroom. Admin. R. 36. The ALJ discounted Rodgers's statements about the frequency, severity, and limiting effects of her incontinence symptoms only to the extent Rodgers claimed she could not work even if provided easy access to a bathroom. Admin R. 36.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d at 1281–82. The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d at 1039. In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284.

The ALJ's written decision shows that she considered all the evidence pertaining to the proper factors for assessing Rodgers's credibility and concluded that the record did not support her claims of persistent frequent incontinence accidents. Admin. R. 36. That conclusion is supported by substantial evidence. The ALJ relied primarily on Rodgers's contemporaneous statements which contradicted the description in her testimony of numerous, frequent episodes of incontinence accidents. Admin. R. 36. Throughout her treatment history, Rodgers included reports of her bowel movement pattern in her subjective statements to her medical providers. Although she alleged disability beginning in 2001, she first mentioned diarrheal symptoms in March 2009. She reported a bout of diarrhea which she attributed to a change in diet, after which she returned to her normal pattern of soft to formed stools twice a day. Admin. R. 317, 348. In October 2009, Rodgers said she had been doing fine for six months without chronic diarrheal symptoms. Admin. R. 343.

During a psychological evaluation in October 2010, Rodgers said her gastrointestinal problems included constipation, diarrhea, and "at times incontinence." Admin. R. 303. She said she could work, however, as long as it was a creative situation, not a traditional boring job, and she could take frequent breaks and had easy access to a bathroom. Admin. R. 309.

In November 2010, Rodgers told Dr. Lew she had been doing quite well for the past year, but had a recent increase in abdominal pain with gas. She denied current and chronic diarrhea and said her bowel movement frequency was once per day to once every other day. Admin. R. 367. She also denied having any diarrhea when she saw her primary care provider later that month. Admin. R. 417. In December 2010, Rodgers saw Peter Smiley, M.D., regarding a Crohn's flare up with abdominal pain, but no diarrhea, urgency, or incontinence. Admin. R. 314-315.

In January 2011, Rodgers told Dr. Lew she was having two to three bowel movements per day with cramping and loose stool, but no diarrhea. She did not mention urgency or incontinence. Admin. R. 333. In February 2011, Rodgers reported diffuse abdominal cramping with nausea but no diarrhea. Admin. R. 438. After a day of medication, she felt better and had a large loose bowel movement. Admin. R. 472. In March 2011, Rodgers said there had been no change in her bowel movement pattern. Admin. R. 576. In April 2011, Rodgers told Dr. Lew she had recently experience abdominal cramping with belching. Her bowel movements were loose to formed and she did not mention diarrhea, urgency, or incontinence. Admin. R. 464. In May 2011, she reported there had been no change in her bowel movement pattern. Admin. R. 570.

On July 22, 2011, Rodgers told Dr. Lew that she typically had two bowel movements per day, but recently had been having four per day. She said her bowel movements were segmented and denied watery diarrhea. She also said, however, she did "notice some urgency with 1 episode where

5 - OPINION AND ORDER

she almost 'had an accident' in the store." Admin. R. 646. In August 2011, Brent Evetts, M.D., examined Rodgers and could not identify a sphincter problem that would explain her incontinence. Admin. R. 698. Rodgers told Dr. Evetts that she had experienced a couple of episodes of urgency with a small amount of incontinence. Admin. R. 695. In October 2011, Rodgers said she was having two to three bowel movements per day that were loose and soft and she noticed urgency. Admin. R. 650.

During 2012, Rodgers did not mention diarrhea, urgency or incontinence in her doctor visits. In October 2012, she told Dr. Lew she was having two bowel movements per day, typically loose. Admin. R. 728.

During an arthritis consultation in June 2013, Rodgers reported that her Crohn's disease symptoms had improved after beginning, Humira, a new medication. She said, however, that she continued to have urgency with incontinence of stool. Admin. R. 861. In July 2013, she said her Crohn's symptoms were under control, but claimed a history of persistent watery diarrhea. Admin. R. 876-877. In October 2013, Rodgers said she "still had some urgency and diarrhea." Admin. R. 893.

In her testimony, Rodgers claimed persistent episodes of incontinence with numerous accidents, but in contemporaneous statements throughout her treatment history she denied chronic diarrheal symptoms, rarely reported incontinence episodes except during July and August of 2011, never reported an actual incontinence accident, and only reported one episode that was almost an accident. From the inconsistencies between Rodgers's testimony and her contemporaneous statements, the ALJ rationally drew an adverse inference as to the credibility of her testimony regarding the severity of her incontinence. The ALJ's findings are sufficiently specific to satisfy me

that the she did not arbitrarily discredit Rodgers's testimony.  *Carmickle*, 533 F.3d at 1160;

*Tommasetti*, 533 F.3d at 1039.  Even if the evidence could be interpreted differently, in a manner

more favorable to Rodgers, the ALJ's factual findings must be upheld.  *Batson,* 359 F.3d at 1193;

*Andrews*, 53 F.3d at 1039-40.  Accordingly, Rodgers has failed to meet her burden of showing that

the ALJ erred and that the error was harmful.  *McLeod*, 640 F.3d at 886-87.

## CONCLUSION

Rodgers's contention that the ALJ erroneously discredited her testimony cannot be sustained

for the foregoing reasons.  The Commissioner's decision is AFFIRMED.

DATED this _12_ day of September, 2016.

Owen M. Panner, Senior Judge
United States District Court